1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
2    Daniel C. Posner (Bar No. 232009)
     danposner@quinnemanuel.com
3    Susan Estrich (Bar No. 124009)
     susanestrich@quinnemanuel.com
4    Zack Schenkkan (Bar No. 304738)
     zackschenkkan@quinnemanuel.com
5  865 South Figueroa Street, 10th Floor
   Los Angeles, California 90017-2543
6  Telephone:  (213) 443-3000
7  Facsimile:   (213) 443-3100

8  QUINN EMANUEL URQUHART & SULLIVAN, LLP
9    Robert L. Raskopf (admission *pro hac vice* pending)
     (robertraskopf@quinnemanuel.com)
10   51 Madison Avenue, 22nd Floor
   New York, New York  10010-1601
11   Telephone: (212) 849-7000
   Facsimile: (212) 849-7100
12
   Attorneys for Defendant Gucci America, Inc.
13

14              UNITED STATES DISTRICT COURT

15       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

16

17 | FOREVER 21, INC., a Delaware corporation, | CASE NO. 17-cv-04706-FMO-E(x) |
18 | | **DEFENDANT GUCCI AMERICA, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL DISMISSAL;** |
   |                  Plaintiff, | |
19 |              vs. | |
20 | | **MEMORANDUM OF POINTS AND AUTHORITIES** |
21 | GUCCI AMERICA, INC., a New York corporation, and GUCCIO GUCCI S.p.A., an Italian entity, | |
22 | | Judge: Hon. Fernando M. Olguin |
23 |                  Defendants. | Hearing Date: September 7, 2017 |
24
25
26
27
28

| | |
|---|---|
| 1<br>2 | GUCCI AMERICA, INC., a New York<br>corporation, |
| 3 | Counterclaimant, |
| 4 | vs. |
| 5<br>6 | FOREVER 21, INC., a Delaware<br>corporation, |
| 7 | Counter-Defendant. |

Hearing Time:  10:00 a.m.

Courtroom:  6D

TO THE COURT AND ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on September 7, 2017, at 10:00 a.m., or as soon thereafter as the matter can be heard, in the courtroom of the Honorable Fernando M. Olguin, located at 350 W. 1st Street, 6th Floor, Courtroom 6D, Los Angeles, CA 90012, defendant and counterclaimant Gucci America, Inc. ("Gucci America") will, and hereby does, move for an order pursuant to Federal Rule of Civil Procedure 12(b)(6) granting Gucci America's Motion for Partial Dismissal of Plaintiff Forever 21, Inc. ("Forever 21")'s Complaint.  Gucci America seeks to dismiss Counts Two through Five of the Complaint completely, on the grounds that Forever 21 has failed to allege sufficient facts to plausibly suggest an entitlement to relief, lacks standing, and seeks relief this Court is not authorized to grant under the Lanham Act, and to dismiss Count One, in part, based on the same grounds.

The motion is based on this Notice of Motion and Motion for Partial Dismissal, the Memorandum of Points and Authorities filed concurrently herewith, the Complaint and all materials incorporated or relied upon in it, matters of which this Court may take judicial notice, and any and all other materials the Court deems proper.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on July 20, 2017.

DATED:  August 7, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By      /s/ Daniel C. Posner
Daniel C. Posner
Attorneys for Defendant and
Counterclaimant Gucci America, Inc.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................. 1

FACTUAL BACKGROUND................................................................... 4

ARGUMENT ........................................................................................ 9

I.    LEGAL STANDARD ................................................................ 9

II.   THE COMPLAINT FAILS TO ALLEGE SUFFICIENT FACTS TO
      SUPPORT CANCELLATION OF GUCCI AMERICA'S WEBBING
      REGISTRATIONS OR DENIAL OF GUCCI AMERICA'S
      WEBBING APPLICATIONS ...................................................... 10

      A.    Count Two Fails Because Forever 21 Does Not Allege Facts
            That Plausibly Suggest That Gucci America's Webbing Marks
            Lack Secondary Meaning.................................................. 10

      B.    Count Three Fails Because Forever 21 Does Not Allege Facts
            That Plausibly Suggest That Gucci America's Webbing Marks
            Are Aesthetically Functional ............................................ 13

      C.    Count Four Fails Because Forever 21 Does Not Allege Facts
            That Plausibly Suggest That Gucci America's Webbing Marks
            Are Generic ...................................................................... 15

      D.    Count Five Fails For All The Above Reasons ..................... 17

III.  FOREVER 21 LACKS STANDING TO SEEK CANCELLATION OF
      REGISTRATIONS THAT GUCCI AMERICA HAS NOT ACCUSED
      FOREVER 21 OF INFRINGING ............................................... 17

IV.   COUNT FIVE SHOULD BE DISMISSED BECAUSE THE COURT
      DOES NOT HAVE THE AUTHORITY TO CANCEL AN
      APPLICATION FOR REGISTRATION....................................... 19

CONCLUSION........................................................................................ 20

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Forever 21's Complaint challenges the validity of Gucci America's distinctive and iconic trademarks—webbing trademarks consisting of three bands of green-red-green ("GRG") or blue-red-blue ("BRB") color combinations (Gucci America's "Webbing Marks").  As discussed in detail below, Forever 21's claims for cancellation of Gucci America's federal trademark registrations in the Webbing Marks and for the "denial" of Gucci America's pending applications for additional federal registrations in the Webbing Marks are subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) because (i) Forever 21 fails to allege sufficient facts to state a plausible claim for relief that the trademarks covered by those registrations and applications are not protectable, (ii) Forever 21 lacks standing to challenge registrations or applications that Gucci America has not asserted Forever 21 is infringing, and (iii) as to Forever 21's claim for the denial of Gucci America's pending applications, the authority to adjudicate a pending application for trademark registration lies with the United States Patent and Trademark Office ("USPTO") in the first instance, not the federal courts.

In contrast to Forever 21's conclusory allegations that the Webbing Marks are unprotectable and are not linked to Gucci America in the minds of consumers, Gucci America has consistently used the Webbing Marks for *decades* on everything from handbags and other leather goods, to clothing, to shoes.  The Webbing Marks have become famous and valuable, and the products on which they are featured are instantly recognizable as belonging to the "Gucci" brand ("GUCCI").  Gucci America's GRG and BRB Webbing Marks are depicted below, including with examples of how they are used on its products:

Case No. 17-cv-04706-FMO-E(x)

GUCCI AMERICA'S MOTION FOR PARTIAL DISMISSAL OF COMPLAINT

| Gucci America's GRG Webbing Mark | Gucci America's BRB Webbing Mark |
|---|---|
|  |  |

Throughout the course of Gucci America's decades of use of the Webbing Marks, the validity and strength of those trademarks have been acknowledged repeatedly by courts.  For example, almost 30 years ago, the Ninth Circuit referred to the "red and green Gucci Stripe" as "***distinctive***."  *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 511 (9th Cir. 1988) (emphasis added).  More recently, the Southern District of New York stated—in trial findings—that the "GRG Stripe" is a "***strong, famous***" mark that is "***entitled to the strictest protection the law affords***," *Gucci America, Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 246 (S.D.N.Y. 2012) (emphasis added), and this District noted that the "strength of the Gucci [GRG Webbing] Marks makes confusion more likely," *Gucci America, Inc. v. Super Star Int'l, Inc.*, 2013 WL 12114741, at *3 (C.D. Cal. Nov. 8, 2013).

To protect its renowned trademarks, Gucci America actively enforces its rights against infringing uses.  In late 2016 and early 2017, Gucci America discovered that retailer Forever 21 was using Gucci America's GRG and BRB Webbing Marks on accessories and clothing, and demanded that it stop.  In contrast to the GUCCI brand's reputation for innovation in design, Forever 21 has a well-known business model of knocking off upscale brands and imitating their marks, and then defending the practice in litigation.  Indeed, the Southern District of New York remarked in 2009 that "***the extraordinary litigating history of [Forever 21] . . . raises the most serious question as to whether it is a business that is***

1 **predicated in large measure on the systematic infringement of competitors'**

2 **intellectual property**." *Anthropologie, Inc. v. Forever 21, Inc.*, 2009 WL 690239, at

3 *4 (S.D.N.Y. Mar. 13, 2009) (emphasis added).

4      Consistent with its litigious business model, rather than cease its infringing

5 conduct, Forever 21 preemptively filed this lawsuit against Gucci America, and now

6 asks the Court for orders cancelling all of Gucci America's existing registrations,

7 and "denying" Gucci America's pending applications for new registrations, for its

8 GRG and BRB Webbing Marks—even going so far as to include registrations and

9 applications that Gucci America never even asserted Forever 21 was infringing.  In

10 other words, Forever 21 is using this lawsuit to obtain judicial approval for its long-

11 standing practice of knocking off famous marks so that it can continue to trade off

12 of Gucci America—even more broadly than it already has—with impunity.

13      Forever 21 does not deny that the webbing designs it has used on its own

14 products are the same as Gucci America's Webbing Marks—and it is plain to see

15 that they are.  Instead, Forever 21 argues that Gucci America's registrations and

16 applications for its Webbing Marks should be cancelled or denied as unprotectable

17 because they allegedly lack secondary meaning, are generic, or are aesthetically

18 functional.  Despite the breadth of these assertions—which challenge the validity of

19 some of the most iconic trademarks in the fashion industry—Forever 21 supports

20 them with *virtually no factual allegations*.  At most, Forever 21 alleges that

21 unspecified colored patterns that include stripes are commonly used in fashion.  But

22 this allegation, even if credited, offers no factual support for its bald assertion that

23 Gucci America's registrations or applications for its GRG and BRB Webbing

24 Marks, in particular, are subject to cancellation or denial on any of the grounds

25 Forever 21 raises.

26      Independently, Forever 21's claims for cancellation and denial fail to the

27 extent that they challenge Gucci America's registrations and applications for

28 Webbing Marks that Gucci America never asserted Forever 21 infringed.  To have

1  standing to seek cancellation of a U.S. trademark registration, a party must allege

2  that continuing the registration causes it particularized harm.  Forever 21, however,

3  does not allege that it has ever used, or has any intent to use, the GRG and BRB

4  Webbing Marks on the types of goods covered by the registrations or applications

5  that Gucci America did not accuse Forever 21 of infringing.  Forever 21 therefore

6  lacks standing to challenge those registrations or applications.

7      Finally, Forever 21's claim seeking the "denial" of Gucci America's pending

8  applications for registration of its Webbing Marks in various classes fails because it

9  is the responsibility of the USPTO, not the federal courts, to adjudicate applications

10  for trademark registration.  The Lanham Act gives federal courts jurisdiction to

11  cancel *existing registrations* when appropriate, not to deny pending applications for

12  yet-to-be-granted registrations.  Rather than allow Forever 21 to short-circuit the

13  administrative process relating to Gucci America's pending applications that has

14  been underway for months, as Forever 21 seeks to do, the Court should defer to the

15  USPTO's evaluation of these applications in the first instance.

16      For all these reasons, as discussed in detail below, Gucci America respectfully

17  requests that the Court grant this motion and dismiss Counts Two through Five of

18  Forever 21's Complaint in full, and Count One in part.

19                          **Factual Background**

20      ***Gucci America's GRG and BRB Webbing Marks***:  GUCCI is a world-

21  famous luxury and fashion brand that features a number of iconic trademarks on its

22  products.  Relevant to this litigation, Gucci America has for decades sold jackets,

23  pants, sweaters, jewelry, and other accessories displaying the GRG and BRB

24  Webbing Marks.  (Compl. at pp. 7-12.)  Gucci America has received several U.S.

25  federal trademark registrations for these trademarks across multiple categories of

26  goods (collectively, Gucci America's "Webbing Registrations"), the majority of

27  which have long since become "incontestable" pursuant to 15 U.S.C. § 1065

28  because the trademarks they cover have "been in continuous use for five consecutive

years subsequent to the date of such registration and [are] still in use in commerce." (*Id.* at pp. 8-11.)  A table of Gucci America's Webbing Registrations is set forth below, with incontestable Webbing Registrations identified by a "*".

*Gucci America's Webbing Registrations*

| Reg. No. | Mark | Reg. Date | First Use In Commerce | Goods/Services (Class) |
|---|---|---|---|---|
| 1511774* | BRB | 11/8/1988 | 1963 | Wallets, purses, handbags, shoulder bags, clutch bags, tote bags, business card cases, credit card cases, passport cases, cosmetic cases sold empty, attaché cases, valises, suitcases, duffle bags, necktie cases, umbrellas, saddles, bridles, walking sticks, canes and key cases (18)[1] |
| 1122780* | GRG | 7/24/1979 | 1963 | Wallets, purses, handbags, shoulder bags, clutch bags, tote bags, card cases, passport cases, cosmetic cases, attaché cases, valises, suitcases, duffles, necktie cases, umbrellas, saddles, bridles, walking sticks, canes, and cases (18) |
| 4563151 | BRB | 7/8/2014 | 1963 | Gym bags, wallets, cosmetic cases sold empty (18) |
| 1495863* | BRB | 7/12/1988 | 1967 | Footwear (25) |
| 1520796* | BRB | 1/17/1989 | 1967 | Goods made or coated with precious metal – namely, candle holders, watches, cufflinks, bracelets, pendants, key rings, paperweights, earrings, rings, necklaces, ice buckets, goblets, and stylized animal containers (14) |
| 1123224* | GRG | 7/31/1979 | 1967 | Goods made or coated with precious metal – namely, candle holders, watches, cufflinks, bracelets, pendants, key rings, paperweights, earrings, rings, necklaces, ice buckets, goblets, stylized animal containers, and letter openers (14) |
| 1483526* | GRG | 4/5/1988 | 1967 | Footwear (25) |
| 4379039 | GRG | 8/6/2013 | 1967 | Shorts, pants, jeans, leggings, t-shirts, polo shirts, shirts, sweaters, sweatshirts, dresses, skirts, swimwear, one piece garments for infants and toddlers, cloth bibs, scarves, ties, hats, gloves, suspenders, belts (25) |

---

[1]  The Complaint incorrectly lists Registration No. 1511774 as covering Class 28.

Case No. 17-cv-04706-FMO-E(x)

GUCCI AMERICA'S MOTION FOR PARTIAL DISMISSAL OF COMPLAINT

| Reg. No. | Mark | Reg. Date | First Use In Commerce | Goods/Services (Class) |
|---|---|---|---|---|
| 4567112 | GRG | 7/15/2014 | 2010 | Eyeglasses and sunglasses and cases therefor; protective covers and cases for mobile electronic communication devices and computers; cell phone straps; computer carrying cases (9)<br><br>Jewelry and key rings of precious metals (14)<br><br>Cosmetic cases sold empty, suitcases, luggage, duffle bags, diaper bags partly and wholly of leather; pet accessories, namely, carriers, collars and leashes (18) |

Gucci America also has five federal trademark applications currently pending with the USPTO to register certain Webbing Marks (Gucci America's "Webbing Applications"). (*Id.* at pp. 13-14.) Below is a table of the Webbing Applications:

*Gucci America's Webbing Applications*

| App. No. | Mark | Filing Date | First Use In Commerce | Goods/Services (Class) |
|---|---|---|---|---|
| 87390952 | GRG | 3/29/2017 | 1968 | Backpacks; briefcases and messenger bags (18) |
| 87206686 | BRB | 10/18/2016 | 1974 | Clothing, namely, sweaters, shirts, tops, jackets, coats, skirts, pants, jeans, shorts, dresses, belts and hats (25)[2] |
| 87391139 | BRB | 3/29/2017 | 2004<br><br>2008<br><br>2011 | Sunglasses; mobile phone cases; cell phone straps (9)<br><br>Scarves (25)<br><br>Backpacks (18) |
| 87116368 | BRB | 7/26/2016 | 2016 | Baby blankets (24) |
| 87116786 | GRG | 7/26/2016 | 2016 | Baby blankets (24) |

---

[2]   Application No. 87206686 initially included "boots, sandals, sneakers," but on July 21, 2017 Gucci America amended the application to delete these items because they were already covered by Gucci America's Registration No. 1495863.

***<u>Gucci America Demands That Forever 21 Stop Using The Webbing Marks</u>*:**

Plaintiff Forever 21 is a retail chain that sells clothing and accessories in brick-and-mortar stores and online.  (Compl. ¶ 9.)

On December 7, 2016, Gucci America sent a cease-and-desist letter to Forever 21 demanding that it stop selling, and refrain from selling in the future, certain products that infringe Gucci America's Webbing Marks.  (*Id.* ¶ 13.)  When Forever 21 neither substantively responded nor agreed to comply, Gucci America sent additional letters on January 6 and February 13, 2017, repeating its demands and identifying additional infringing items that came to Gucci America's attention in the interim.  (*Id.* ¶¶ 14-15.)  Specifically, Gucci America identified, *inter alia*, the following infringing products being sold on Forever 21's website, which are also identified in Forever 21's Complaint (collectively, the "Infringing Products"):

(1) "Striped Choker":  a cloth choker that copied Gucci America's BRB Webbing Mark in its entirety (*id.* at p. 4);

(2) "Embroidered Satin Bomber Jacket":  a jacket with trim and cuffs that copied Gucci America's BRB Webbing Mark (*id.* at p. 4);

(3) "Tiger Embroidery Stripe Sweater":  a sweater with trim and cuffs that copied Gucci America's BRB Webbing Mark (*id.* at p. 5);

(4) "Metallic Faux Leather Bomber":  a jacket with trim and cuffs that copied Gucci America's BRB Webbing Mark (*id.* at p. 6); and

(5) "Floral Bomber Jacket":  a jacket with trim and cuffs that copied Gucci America's GRG Webbing Mark (*id.* at p. 7).

In its letters, Gucci America asserted that the Infringing Products infringed Registration Nos. 1520796 (BRB Webbing Registration, which includes necklaces) and 4379039 (GRG Webbing Registration, which includes clothing) (collectively, the "Asserted Webbing Registrations"), and Webbing Application No. 87206686 (BRB Webbing Application, which includes clothing) (the "Asserted Webbing Application").  (*Id.* ¶ 7 & pp. 7-10; *id.* ¶ 21 & pp. 12-15.)  Gucci America did not assert that the Infringing Products infringed its other Webbing Registrations—Nos. 1122780, 1123224, 1483526, 1495863, 1511774, 4567112 or 4563151 (the

"Unasserted Webbing Registrations").  (*Id* ¶ 19 & pp. 10-12.)  Nor did Gucci
America assert that Forever 21 infringed its rights covered by any Webbing
Applications other than the Asserted Webbing Application (collectively, the
"Unasserted Webbing Applications").[3]

***Forever 21 Preemptively Sues Gucci America:***  Gucci America's February
13, 2017 letter demanded that Forever 21 cease infringing Gucci America's
intellectual property and agree to refrain from future infringement, or Gucci
America would be forced to consider all actions necessary to fully protect its
valuable U.S. intellectual property rights.  The parties then began communicating
regarding the matter; as a result, Gucci America did not immediately file a lawsuit
against Forever 21.  (*Id.* ¶¶ 23, 25.)  On June 26, 2017, however, without any
advance notice or discernable impetus other than to be able to continue its
infringements with impunity, Forever 21 sued Gucci America[4] preemptively,
alleging that the GRG and BRB Webbing Marks are not protectable under U.S. law
because "[t]he colors red, blue, and green, and stripe designs, are among the most
favorite, popular and widely used colors and design features on clothing" (*id.* ¶ 1),
and "[m]any clothing and accessory items adorned with decorative stripes colored
blue-red-blue or green-red-green are sold by countless third parties" (*id.* ¶ 27).
Based on those two generalized allegations, Forever 21 contends that the marks

---

[3]   While Gucci America identified three other federal trademark registrations in its
February 13, 2017 letter to demonstrate the full scope of its intellectual property
rights in GRG and BRB federal trademark registrations, the only registrations it
accused Forever 21 of infringing were the Asserted Webbing Registrations, which
covered the Infringing Products.  Gucci America has since identified additional
products sold by Forever 21 that infringe the Webbing Marks, which Gucci America
includes in its Counterclaims against Forever 21.  (Counterclaims ¶ 45.)  Those
products all fall within the classes of goods covered by the Asserted Webbing
Registrations and the Asserted Webbing Application.

[4]   Although Guccio Gucci S.p.A. is named as a co-defendant in this action, it has
not been served with the Complaint, and, in any event, is not the owner or
applicant for any of the U.S. trademark rights at issue in the Complaint.  Rather, as
the relevant records of the USPTO reflect, Gucci America is the sole owner of all
U.S. rights for the Webbing Registrations and is the sole applicant for all of the
Webbing Applications.

1   covered by Gucci America's Webbing Registrations and Webbing Applications lack

2   secondary meaning, are aesthetically functional, and/or generic.

3          In its Complaint, Forever 21 seeks: (i) a declaratory judgment that the

4   Infringing Products are not infringing (Count 1); (ii) cancellation of Gucci

5   America's Webbing Registrations for lack of secondary meaning (Count 2),

6   aesthetic functionality (Count 3), and "genericism" (Count 4); and (iii) "denial" of

7   Gucci America's Webbing Applications on those same grounds (Count 5).  (*Id.* ¶¶

8   31-46.)

9                                  **Argument**

10  **I.    LEGAL STANDARD**

11         A complaint will survive a motion to dismiss under Rule 12(b)(6) when it

12  contains "sufficient factual matter, accepted as true, to state a claim to relief that is

13  plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Conclusory

14  allegations or allegations that are no more than a statement of a legal conclusion 'are

15  not entitled to the assumption of truth.'" *Gibson Brands, Inc. v. John Hornby*

16  *Skewes & Co.*, 2014 WL 4187979, at *7 (C.D. Cal. Aug. 22, 2014) (quoting *Iqbal*,

17  556 U.S. at 679)).  Rather, "to be entitled to the presumption of truth, allegations

18  . . . may not simply recite the elements of a cause of action, but must contain

19  sufficient allegations of underlying facts to give fair notice and to enable the

20  opposing party to defend itself effectively."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th

21  Cir. 2011).  A plaintiff must do more than plead facts "consistent with" its claims or

22  that allow for the "sheer possibility" it is entitled to relief; it must plead "sufficient"

23  facts that, if true, "would allow the court to draw the reasonable inference that the

24  defendant is liable."  *Iqbal*, 556 U.S. at 678.

25         "Dismissal for failure to state a claim can be warranted based on either a lack

26  of a cognizable legal theory or the absence of factual support for a cognizable legal

27  theory."  *See British Broad. Corp. v. Stander*, 2017 WL 1807592, at *4 (C.D. Cal.

28  March 18, 2017) (Olguin, J.) (citing *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521

F.3d 1097, 1104 (9th Cir. 2008)).  "A complaint may be dismissed also for failure to state a claim if it discloses some fact or complete defense that will necessarily defeat the claim."  *Id*. (citing *Franklin v. Murphy*, 745 F.2d 1221, 1228-29 (9th Cir. 1984)).

## II.   THE COMPLAINT FAILS TO ALLEGE SUFFICIENT FACTS TO SUPPORT CANCELLATION OF GUCCI AMERICA'S WEBBING REGISTRATIONS OR DENIAL OF GUCCI AMERICA'S WEBBING APPLICATIONS

Gucci America moves to dismiss Counts Two through Five of the Complaint because they are not supported by sufficient factual allegations to state a claim under Rule 12(b)(6).  Specifically, as shown below, Forever 21 has failed to plead sufficient facts to state a claim that any of Gucci America's Webbing Registrations are subject to cancellation, or that any of Gucci America's Webbing Applications are subject to "denial," on the bases of a lack of secondary meaning, aesthetic functionality, or "genericism."

### A.   Count Two Fails Because Forever 21 Does Not Allege Facts That Plausibly Suggest That Gucci America's Webbing Marks Lack Secondary Meaning

Count Two asks the Court to cancel Gucci America's three most recent Webbing Registrations—Registration Nos. 4379039 (GRG), 4563151 (BRB), and 4567112 (GRG)—on the grounds that the trademarks covered by those registrations allegedly lack secondary meaning.  A trademark has "acquired secondary meaning" when it "has become distinctive of the applicant's goods in commerce." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1142 n.3 (9th Cir. 2002) (quoting *Park 'N Fly v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194 (1985)).  Secondary meaning thus exists where there "is a mental recognition in buyers' and potential buyers' minds that products connected with the [mark] are associated with the same source."  *Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 820 (9th Cir. 1980).  A federal trademark registration creates a "legal presumption of . . . distinctiveness," such that a plaintiff challenging a registered trademark has the "burden of affirmatively pleading and disproving" secondary meaning.  *Globefill Inc. v.*

1  *Elements Spirits, Inc.*, 2012 WL 12876944, at *4 (C.D. Cal. Oct. 31, 2012).  It is no

2  accident that Forever 21 includes only the three latest Webbing Registrations in

3  Count Two:  these are the only Webbing Registrations Forever 21 can procedurally

4  seek to challenge as lacking secondary meaning because the other six Webbing

5  Registrations are all incontestable under 15 U.S.C. § 1065, which "serves as

6  conclusive proof that the mark has secondary meaning," *Entrepreneur Media*, 279

7  F.3d at 1142 n.3 (citation omitted), and thus cannot be challenged on this ground.

8       Forever 21 fails to affirmatively plead any facts that, even if proven, would

9  establish that consumers do not connect the marks covered by the three challenged

10  Webbing Registrations with Gucci America as a source of goods.  Indeed, the only

11  allegations in Forever 21's threadbare Complaint that could possibly relate to this

12  issue are that the "colors red, blue, and green, and stripe designs, are among the

13  most favorite, popular and widely used colors and design features on clothing,"

14  (Compl. ¶ 1), and that "[m]any clothing and accessory items adorned with

15  decorative stripes colored blue-red-blue or green-red-green are sold by countless

16  third parties" (*id.* ¶ 27).  These conclusory allegations are not supported by any

17  facts, and thus "'are not entitled to the assumption of truth.'"  *Gibson Brands*, 2014

18  WL 4187979 at *7 (quoting *Iqbal*, 556 U.S. at 679)).  And, even if these allegations

19  were supported by sufficient facts, they still would not raise a plausible inference

20  that Gucci America's Webbing Marks have not acquired secondary meaning, or do

21  not act as source-identifiers for Gucci America, because Forever 21's allegations

22  about generic colored "stripes" do not relate to the specific Webbing Marks as they

23  are actually presented and used by Gucci America.  Thus, at most, Forever 21 has

24  raised the "sheer possibility" that it is entitled to relief based on the alleged lack of

25  secondary meaning of the challenged Webbing Registrations, which is insufficient

26  to "allow the court to draw the reasonable inference" that Forever 21 is entitled to

27  such relief.  *Iqbal*, 556 U.S. at 678.

28

Forever 21's empty factual allegations are all the more glaring in the face of Gucci America's federal trademark registrations for the challenged Webbing Marks, which are "prima facie evidence of the validity of the registered mark[s]."  15 U.S.C. § 1115(a); *see also KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 604 (9th Cir. 2005) ("Federal registration of a trademark endows it with a strong presumption of validity.") (citation omitted).  The insufficiency of Forever 21's allegations of lack of secondary meaning also stands in stark contrast to the long history of judicial findings that the GRG Webbing Mark, in particular, when used in a variety of contexts in apparel and accessories, is "strong," "distinctive" and "entitled to the strictest protection the law affords."  For example:

- "The Gucci Trademarks at issue, *i.e.*, the GUCCI Word Mark, the GREEN–RED–GREEN Stripe, and the REPEATING GG, are ***strong*** marks." *Gucci Am., Inc. v. Gucci*, 2009 WL 8531026, at *14 (S.D.N.Y. Aug. 5, 2009) (emphasis added) (in context of men's and women's apparel, accessories, sunglasses, footwear, and jewelry).

- "The Gucci Accessory Collection . . . launched by Gucci Parfums includes handbags, cosmetic bags, wallets, key rings and pens, all bearing the ***distinctive*** red and green Gucci stripe." *Manetti-Farrow*, 858 F.2d at 511 (emphasis added).

- "The Gucci marks at issue …, *inter alia*, of variations of a 'GG' symbol, green and red stripes [and the Gucci word mark] … ***constitute 'strong' trademarks, which are accorded the broadest protection against infringement***." *Gucci Am., Inc. v. Action Activewear, Inc.*, 759 F. Supp. 1060, 1064 (S.D.N.Y. 1991) (emphasis added) (in context of clothing and accessories for men, women, and children).

- "The green-red-green stripe device is ***a strong mark***." *Gucci Am., Inc. v. Dart, Inc.*, 715 F. Supp. 566, 568 (S.D.N.Y. 1989) (emphasis added) (in context of watches, handbags, leather goods, and clothing).

- "Indeed, other courts have found that the GRG Stripe and the Repeating GG Patten are strong, famous marks entitled to ***the strictest protection the law affords***." *Guess?*, 868 F. Supp. 2d at 246 (emphasis added).

- "***The strength of the Gucci [GRG Webbing] Marks*** makes confusion more likely[.]" *Super Star Int'l*, 2013 WL 12114741 at *3 (emphasis added).

Forever 21 cannot sidestep or rebut these multiple affirmative judicial findings of strong secondary meaning with conclusory assertions that the Webbing Marks do not have any secondary meaning at all.  At a minimum, Forever 21 must

1 allege "sufficient factual matter" to support its assertions of lack of secondary

2 meaning.  *Iqbal*, 556 U.S. at 678.  Because it has failed to do so, Count Two should

3 be dismissed.

4      **B.**     **Count Three Fails Because Forever 21 Does Not Allege Facts That Plausibly Suggest That Gucci America's Webbing Marks Are Aesthetically Functional**

5

6      Count Three seeks cancellation of all nine of Gucci America's Webbing

7 Registrations on the grounds that the Webbing Marks covered by those registrations

8 are aesthetically functional.[5]  A mark is said to be unprotected due to its "aesthetic

9 functionality" when "protection of the feature as a trademark would impose a

10 significant non-reputation-related competitive disadvantage."  *Au-Tomotive Gold,*

11 *Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1072 (9th Cir. 2006).  Put

12 differently, "if a design's aesthetic value lies in its ability to confer a significant

13 benefit that cannot practically be duplicated by the use of alternative designs, then

14 the design is functional."  *Qualitex Co. v. Jacobson Prod. Co.*, 514 U.S. 159, 170

15 (1995) (internal quotation marks omitted).  In general, aesthetic functionality is

16 "limited to product features that serve an aesthetic purpose wholly independent of

17 any source-identifying function."  *Au-Tomotive Gold*, 457 F.3d at 1073.[6]

18      Forever 21's Complaint is devoid of any factual allegations that could support

19 its assertion of aesthetic functionality.  Even the allegations in paragraphs 1 and 27

20 regarding the alleged proclivity of unidentified "third parties" to use unspecified

21 "color" stripe designs are irrelevant to aesthetic functionality.  Assuming, for the

22 sake of argument, the ubiquity of Gucci America's Webbing Marks—which Gucci

23

24 [5]   Specifically, Count Three seeks cancellation of Webbing Registration Nos. 1495863 (BRB), 1511774 (BRB), 1520796 (BRB), 1483526 (GRG), 1123224

25 (GRG), 1122780 (GRG), 4379039 (GRG), 4563151 (BRB), and 4567112 (GRG).

26 [6]   Forever 21 does not, nor could it, contend that Gucci America's Webbing Registrations are subject to cancellation because of **utilitarian** functionality—*i.e.*,

27 that they are "essential to the use or purpose of the article [or] affects [its] cost or quality."  *Millennium Labs., Inc. v. Ameritox, Ltd.*, 817 F.3d 1123, 1129 (9th Cir.

28 2016) (quoting *Au-Tomotive Gold*, 457 F.3d at 1072).

1   America denies, and Forever 21 fails to support with any specific factual
2   allegations—that does not mean that there are no possible equally aesthetically
3   attractive alternatives to those designs or patterns available to competitors, or that
4   the Webbing Marks, specifically, are not source-identifying for Gucci America.
5   *See*, *e.g.*, *Moroccanoil, Inc. v. Zotos Int'l, Inc.,* 2017 WL 319309, at *4 (C.D. Cal.
6   Jan. 19, 2017) (rejecting argument that trademark was aesthetically functional
7   because its various components were "common in hair care products"); *Nova Wines,*
8   *Inc. v. Adler Fels Winery LLC*, 467 F. Supp. 2d 965, 978 (N.D. Cal. 2006) (rejecting
9   argument that Marilyn Monroe mark was aesthetically functional because party did
10  "not assert that they would be placed at a significant competitive disadvantage if
11  they were denied the right to place Marilyn Monroe images on their wine bottles").
12          Possible combinations of two-tone, parallel stripe patterns are as abundant as
13  the number of color combinations and stripe widths the human eye can perceive.
14  There is no reason, and none alleged, why Forever 21, or any other retailer, could
15  not choose from innumerable, equally attractive designs to use on its clothing as
16  alternatives to the GRG and BRB Webbing Marks in which Gucci America has
17  invested millions of dollars, and decades of effort, to develop as strong source
18  identifiers of the GUCCI brand to consumers.  *See Qualitex Co.*, 514 U.S. at 170
19  (courts "should not discourage firms from creating aesthetically pleasing mark
20  designs, for it is open to their competitors to do the same").  Forever 21's allegations
21  are therefore insufficient to draw any reasonable inference that Forever 21 is entitled
22  to relief based on the alleged aesthetic functionality of the Webbing Marks.  Count
23  Three should be dismissed.
24
25
26
27
28

Case No. 17-cv-04706-FMO-E(x)
GUCCI AMERICA'S MOTION FOR PARTIAL DISMISSAL OF COMPLAINT

**C.    Count Four Fails Because Forever 21 Does Not Allege Facts That Plausibly Suggest That Gucci America's Webbing Marks Are Generic**

Count Four seeks cancellation of all nine of Gucci America's GRG and BRB Webbing Registrations on the grounds that they are generic.[7]  A product design may be generic: "(1) if the definition of a product design is overbroad or too generalized; (2) if a product design is the basic form of a type of product; or (3) if the product design is so common in the industry that it cannot be said to identify a proper source."  *Gibson Brands*, 2014 WL 4187979, at *8.

No plausible argument can be made—and none is suggested by Forever 21's allegations—that Gucci America's Webbing Registrations are "overbroad or generalized" in their definition of the GRG and BRB Webbing Marks.  Nor does Forever 21 allege any facts that would plausibly suggest that the GRG and BRB Webbing Marks are the "basic form of a type of product."  To the extent that the Complaint could be read to include any factual support for Forever 21's allegations of "genericism," it lies once again in the same two paragraphs about the alleged widespread use by "third parties" of various unspecified color stripe designs. (Compl. ¶¶ 1, 27.)  Not only are these allegations non-specific and conclusory, but even if it were accurate that some unidentified other parties sell products with some unidentified other designs incorporating stripes, that would not raise any plausible inference that the GRG and BRB Webbing Marks, as used by Gucci America, are not identified with the GUCCI brand as the source.

In *Gibson Brands*, for example, the defendant similarly sought cancellation of the plaintiff's marks because there allegedly were "countless other manufacturers [who] have manufactured and sold in the United States" products with features "identical or substantially similar" to the plaintiff's marks.  2014 WL 4187979, at *8.  The Court found these factual allegations wanting, including because the

---

[7]    Count Four challenges the same nine GRG and BRB Webbing Registrations as at issue in Count Three.  *See supra* n.5.

1   defendant did not "name any of the 'countless other manufacturers," or "specify the

2   time period … during which the purported similar guitars were 'manufactured and

3   sold.'" *Id*. at *9.  The Court held that this "information is necessary to state a

4   plausible claim for a generic mark because Defendant must show that the allegedly

5   similar and/or identical [products] were being sold at the date when Defendant

6   'entered the market with the disputed mark or term.'" *Id.* (quoting *Yellow Cab Co.*

7   *of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th Cir. 2005)).

8   Forever 21's Complaint suffers from similar defects.

9       Not only are Forever 21's allegations factually insufficient, they are contrary

10  to law to the extent they wrongly assume that particularized, source-identifying uses

11  of shapes, patterns and colors are necessarily "generic."  For example, plaid is as

12  common and prevalent in the clothing industry as any pattern, but that does not

13  mean that "Burberry Plaid" is not a strong trademark entitled to protection.  *See*

14  *Burberry Ltd. v. Euro Moda, Inc.*, 2009 WL 1675080, at *2 (S.D.N.Y. June 10,

15  2009) ("The USPTO honored Burberry in 2008 by selecting it to participate as one

16  of only 14 well-known brands in the USPTO's 2008 National Trademark expo . . .

17  not[ing] that '. . . Burberry owns an unusual yet very important trademark for their

18  plaid design.'"); *see also*, *e.g.*, USPTO Reg. No. 4000067 (July 26, 2011)

19  (registration issued to Hermes International for "mark [that] consists of this shade of

20  the color orange"); USPTO Reg. No. 2159865 (May 26, 1998) (registration issued

21  to UPS for "the mark [that] consists of the color brown which is applied to . . .

22  clothing").

23      Likewise, even if third parties use designs that happen to include red, green,

24  or blue stripes in various color combinations and widths, Gucci America's particular

25  GRG and BRB Webbing Marks are nonetheless famous, enduring, and distinctive

26  marks that have been recognized time and again, for decades, as source identifiers of

27  the GUCCI brand.  Forever 21 has failed to plead any factual allegations raising any

28  reasonable inference to the contrary.  Count Four should therefore be dismissed.

### D.   Count Five Fails For All The Above Reasons

Count Five asks the Court to "deny" Gucci America's Webbing Applications pending before the USPTO for certain GRG and BRB Webbing Marks on the grounds that those Marks: (i) lack secondary meaning; (ii) are aesthetically functional; and (iii) are generic.[8]  As argued below, *infra* Part IV, the Court does not have the authority to order the denial of a pending application for registration of a trademark.  But in any event, for all the reasons discussed above, Count Five still fails because the Complaint does not allege sufficient factual matter to plausibly assert that the marks included in the Webbing Applications are unprotectable for any of the reasons Forever 21 has identified.

### III.   FOREVER 21 LACKS STANDING TO SEEK CANCELLATION OF REGISTRATIONS THAT GUCCI AMERICA HAS NOT ACCUSED FOREVER 21 OF INFRINGING

Independent of the arguments above, Forever 21 fails to state a claim for cancellation or "denial" on any of the asserted grounds (Counts Two, Three, Four and Five), or for a declaratory judgment of non-infringement (Count One), with regard to either the seven Unasserted Webbing Registrations or the four Unasserted Webbing Applications, because Forever 21 lacks standing to challenge them.

"In order to bring a claim for trademark cancellation, the cancellation petitioner must plead and prove facts showing a 'real interest' in the proceedings in order to establish standing."  *Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F. Supp. 2d 1013, 1034 (C.D. Cal. 2011); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (declaratory relief requires "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment") (internal quotation marks omitted).  "A cancellation petitioner must show that he is more than an

---

[8]   Count Five challenges all five pending Webbing Applications:  Serial Nos. 87116786 (GRG) (filed July 26, 2016), 87206686 (BRB) (filed Oct. 18, 2016), 87116368 (BRB) (filed July 26, 2016), 87390952 (GRG) (filed Mar. 29, 2017), and 87391139 (BRB) (filed Mar. 29, 2017).

intermeddler but rather has a personal interest, and that there is a real controversy between the parties." *Sunrich Food Grp., Inc. v. Pac. Foods of Oregon, Inc.*, 233 F. Supp. 2d 1273, 1277 (D. Or. 2002) (internal quotation marks and brackets omitted). Simply pleading that the plaintiff has suffered injuries "relating to the generic or descriptive nature of the marks" is not sufficient. *Ketab Corp. v. Mesriani & Assocs.*, 2015 WL 8022874, at *7 (C.D. Cal. Dec. 4, 2015).

Before Forever 21 filed the Complaint, Gucci America accused Forever 21 of infringing the two Asserted Webbing Registrations.  (Compl. ¶¶ 13-14.) Nevertheless, Forever 21 seeks cancellation not only of those two Registrations, but also the seven Unasserted Webbing Registrations that Gucci America never accused Forever 21 of infringing (as none of the Infringing Products falls within the scope of those seven Registrations).  Forever 21 alleges no facts suggesting that it has any "real and immediate" interest in, or that there is a "real controversy" regarding, the seven Unasserted Webbing Registrations, which cover:  (i) the use of GRG Webbing Marks on goods such as footwear, jewelry, wallets, gym bags, cases, purses, and eyeglasses; and (ii) the use of BRB Webbing Marks on goods such as footwear, wallets, gym bags, cases and purses.  That is, ***none*** of the Infringing Products features the GRG or BRB Webbing Marks on goods covered by the Unasserted Webbing Registrations.  Absent any factual allegations showing that Gucci America asserted that Forever 21 was selling products that fall into one of the classes of goods covered by the Unasserted Webbing Registrations, Forever 21's claims seeking cancellation of the Unasserted Webbing Registrations cannot proceed for lack of standing.

For the same reasons, Forever 21 lacks standing to challenge the Unasserted Webbing Applications, as Gucci America did not allege any infringement by Forever 21 based on the classes of goods covered by these pending applications, and Forever 21 alleges no facts suggesting there is a "real controversy" regarding their registrability.

Accordingly, there is no justiciable controversy concerning Gucci America's Unasserted Webbing Registrations or Unasserted Webbing Applications identified above. The Court should therefore dismiss all of Forever 21's claims to the extent they apply to those Webbing Registrations and Applications.

## IV. COUNT FIVE SHOULD BE DISMISSED BECAUSE THE COURT DOES NOT HAVE THE AUTHORITY TO CANCEL AN APPLICATION FOR REGISTRATION

Count Five, which asks the Court to direct the denial of Gucci America's Webbing Applications, should be dismissed for the independent reason that the Court does not, as a matter of law, have the authority to deny a pending application for the registration of a trademark. Rather, a district court can only cancel an existing registration. *See Silver Textile, Inc. v. D Lux Brands, LLC*, 2014 WL 12594456, at *5 (C.D. Cal. May 12, 2014) ("Where there is only a pending application at issue, the Court lacks authority to cancel that application."); *Farm & Trade, Inc. v. Farmtrade, LLC*, 2014 WL 1665146, at *7 (E.D. Cal. Apr. 23, 2014) ("[T]o state a claim [for cancellation under the Lanham Act], Defendant must hold a registered trademark with the USPTO. The existence of a pending application is not sufficient.").

The power of the Court to act upon a registration is explicitly constrained by the text of the Lanham Act. Specifically, 15 U.S.C. § 1119 provides: "In any action involving a ***registered mark*** the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations" (emphasis added). Nowhere does the statute say that a Court has the authority to ***prevent*** a mark from being registered in the first place; rather, a precondition is that the specific mark at issue be "registered." *See, e.g., GMA Accessories, Inc. v. Idea Nuova, Inc.*, 157 F. Supp. 2d 234, 241 (S.D.N.Y. 2000) (dismissing claim to "cancel" trademark application).

1    Accordingly, Forever 21's exclusive avenue for challenging Gucci America's

2  pending applications lies with the USPTO, not the federal courts.  And, in fact,

3  Forever 21 has already availed itself of the administrative process in the USPTO by

4  initiating opposition proceedings as to the three Webbing Applications that have

5  been approved for publication, as shown below:

6     • Application No. 87116786 (GRG in Class 24):  Forever 21 filed an
        Opposition to the application on July 20, 2017 (Opp. No. 91/235,699).

7     • Application No. 87206686 (BRB in Class 25):  Forever 21 filed an
8       Opposition to the application on July 24, 2017 (Opp. No. 91/235,735),
        after having sought and been granted an extension of time to oppose.

9     • Application No. 87116368 (BRB in Class 24):  Forever 21 filed an
10      Opposition to the application on July 24, 2017 (Opp. No. 91/235,736),
        after having sought and been granted an extension of time to oppose.[9]

11  Given the Lanham Act's focus on "registered marks," 15 U.S.C. § 1119, and the

12  existence of ongoing administrative proceedings in the USPTO regarding the same

13  applications Forever 21 challenges here, the Court should decline to hear Forever

14  21's claim for "denial" of the Webbing Applications, and dismiss Count Five.

15    Finally, even if the Court did opt to consider Count Five, the claim fails for

16  the same reasons discussed above.  *See supra* Parts II & III.

17                            <u>Conclusion</u>

18  For the foregoing reasons:

19    • Counts Two through Five should be dismissed for failure to allege

20       sufficient factual material pursuant to Rule 12(b)(6);

21    • Counts One through Five should be dismissed for lack of standing as to

22       the seven Unasserted Webbing Registrations and four Unasserted

23

24

25

26    [9]  The other two Webbing Applications—Nos. 87390952 (GRG in Class 18) and
27  87391139 (BRB in Classes 9, 18, 25)—have not yet been accepted for publication
    on the Principal Register.  As to each, Gucci America's deadline to respond to the
28  Trademark Examiner's pending non-final action is October 18, 2017.

1    Webbing Applications that Gucci America never asserted against

2    Forever 21; and

3    • Count Five should be dismissed because the Court does not have the

4    authority to deny pending trademark applications.

5

6    DATED:  August 7, 2017          QUINN EMANUEL URQUHART &
                                      SULLIVAN, LLP
7

8                                    By  _____
                                         */s/ Daniel C. Posner*
9                                        Daniel C. Posner
                                         Attorneys for Defendant and
10                                       Counterclaimant Gucci America, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28